NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0289n.06

No. 22-5458

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 20, 2023
DEBORAH S. HUNT, Clerk

WILL MCLEMORE, et al.,

    Plaintiffs-Appellees,

v.

ROXANA GUMUCIO, et al.,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

OPINION

Before: SILER, BATCHELDER, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. The plaintiffs in this case challenge the constitutionality of a Tennessee auctioneering statute that the State has never applied to them and whose meaning is for the Tennessee courts, not the federal courts, to decide. Nor, according to the plaintiffs' own complaint, has the statute affected their auctioneering activities in any way. Yet the district court construed the statute, held it unconstitutional, and permanently enjoined its enforcement. We vacate all the district court's orders and remand with instructions to dismiss for lack of jurisdiction.

I.

A.

Plaintiffs are auctioneers from Tennessee and a handful of other states. Will McLemore is an auctioneer licensed and located in Tennessee; his company, McLemore Auction Company, LLC, is located in Nashville and holds a Tennessee license. Aaron McKee is a Kansas resident and the president and CEO of Purple Wave, Inc., a Delaware corporation headquartered in Manhattan, Kansas. Purple Wave conducts online auctions of heavy construction equipment,

among other things. None of the remaining plaintiffs generate at least $25,000 of revenue per year pursuant to online auctions, meaning the statute at issue here does not apply to them. *See* 2019 Tenn. Pub. Acts, ch. 471 § 6(12) ("PC 471" or the "2019 amendment").

B.

For more than 50 years now, Tennessee has required auctioneers who are located in Tennessee to obtain a license from the Tennessee Auctioneer Commission. *See* 1967 Tenn. Pub. Acts, ch. 335. In 2001, with the advent of online auctions, the Commission issued a rule—known as Rule 18—providing that "[a]ny electronic media or computer-generated auction originating from within Tennessee shall conform to the requirements of" Tennessee's auctioneering laws, including its licensing requirement. Tenn. Comp. R. & Regs. 0160-01-.18. The provision at issue here was enacted in 2019, when Tennessee amended its definition of "auction" to include "electronic" (as opposed to "oral" or "written") exchanges between an auctioneer and audience. *See* PC 471 § 4(2).

The plaintiffs contend that the 2019 amendment extends the Tennessee licensing requirement to out-of-state auctioneers who conduct online auctions in which a Tennessee resident chooses to bid. The plaintiffs brought this suit to enjoin enforcement of the amendment, claiming (among other things) that it violates the "dormant" Commerce Clause's prohibition against extraterritorial regulation, as well as the First Amendment and the Tennessee Constitution. The State defendants—members of the Tennessee Auctioneering Commission, all represented here by the Tennessee Attorney General—moved to dismiss the complaint, observing that the State had never applied its licensing requirement to auctioneers located outside of Tennessee and had no intention of doing so as a result of the 2019 amendment.

The district court nonetheless proceeded to construe the Tennessee statute as amended in 2019 and to construe it, moreover, to extend the Tennessee licensing requirement to any auctioneer—located anywhere in the country, maybe anywhere in the world—whose online auctions are accessible to anyone in Tennessee. *McLemore v. Gumucio*, 593 F. Supp. 3d 764, 772 n.10 (M.D. Tenn. 2022). The court reasoned that the Tennessee auctioneering statute lacked any provision that expressly limited the geographic scope of its licensing requirement to auctioneers located in Tennessee. Yet the statute might impliedly include such a geographic limit, since it does say that "[a]ny auctioneer licensed under this chapter may conduct auctions at any time or place in this state." Tenn. Code Ann. § 62-19-115(a). Moreover, the relevant context for a statute's interpretation usually includes certain assumptions—what the law sometimes calls background principles—that an ordinary reader would bring to her understanding of the statutory text. One such assumption is that a statute's geographic reach is usually confined within the borders of the government that enacts it. *See, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none."); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 268 (2012) ("A statute presumptively has no extraterritorial application."). And so an ordinary reader might well assume, for example, that a Tennessee auctioneering statute does not impose licensing requirements on auctioneers located in Alaska or New Zealand.

In a series of lengthy opinions, however, the district court concluded otherwise—and held that the statute, as construed by that court, violated the dormant Commerce Clause. As relief, the court entered a permanent injunction against the enforcement of the 2019 amendment. *McLemore*, 593 F. Supp. 3d at 783. So far as we can tell, the court dismissed the plaintiffs' First Amendment claim as moot. *Id.* The court dismissed the rest of the plaintiffs' claims on the merits. *McLemore*

3

*v. Gumucio*, No. 3:19-CV-00530, 2020 WL 7129023, at \*23 (M.D. Tenn. Dec. 4, 2020). This appeal followed.

II.

A question not addressed in the district court's opinions is why the federal courts should be deciding this case at all. The meaning of the Tennessee auctioneering statute, and of the 2019 amendment in particular, is for the Tennessee courts to decide. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). That meaning is apparently disputed, at least by these plaintiffs. And the Supreme Court has held that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975); *see also R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941). Yet here both the state-law and the constitutional questions were decided nonetheless.

The more immediate question, however, is whether this suit is justiciable under Article III. To have standing, a plaintiff must have suffered an injury that (among several other requirements) is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). None of the plaintiffs has even tried to allege any such injury here. McLemore is an in-state auctioneer and thus concededly must obtain a Tennessee license in any event. And the State undisputedly has never taken any action to require the out-of-state plaintiffs to obtain a Tennessee auctioneering license or to sanction them for not having one. To the contrary, in this litigation, the Tennessee Attorney General has repeatedly argued that the 2019 amendment does not require out-of-state auctioneers to obtain a Tennessee license. And the out-of-state plaintiffs themselves have said that they continue to conduct their online auctioneering activities—including

4

the acceptance of bids from Tennessee residents—as they have in the past. *See* Compl. ¶¶ 284–91.

Nor have the out-of-state plaintiffs demonstrated any "substantial risk" of enforcement of the statute against them. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). And the "mere existence of a statute" is not enough "to create a case or controversy within the meaning of Article III." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997). Nor is this case ripe, given that "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

The district court thought this case was justiciable on the ground that "one can easily imagine [the] State (perhaps under different executive branch leadership) changing its tune in the future; in the throes of enforcement zeal, the State someday could insist that there is no such geographical limitation" to the Tennessee auctioneering statute's enforcement. *McLemore*, 593 F. Supp. 3d at 778. But the Supreme Court has been clear that such "some day" potentialities "do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Neither do mere imaginings. This case is non-justiciable.

\*     \*     \*

The federal courts cannot interpret the Tennessee auctioneering statute definitively—and in this case have no business interpreting it at all. We vacate the district court's judgment and all of its orders in this case, and remand with instructions to dismiss the case for lack of jurisdiction.